JOHN S. LEE & others *vs.* COMMISSIONER OF REVENUE
& another.[1]

Hampden. April 1, 1985. — August 1, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law,* Right to travel, Taxation. *Taxation,* Real estate tax:
abatement.

A statute granting real estate tax abatements to homeowners over the age of
seventy, but excluding those who have not owned and occupied their
homes for at least ten years, did not so seriously burden the exercise of
any Federal constitutional "right to travel" as to be constitutionally per-
missible only if supported by a compelling State interest. [529-532]
A statute granting real estate tax abatements to homeowners over the age of
seventy who have owned and occupied their homes for at least ten years
was, with respect to the durational requirement, supported on a rational
basis, namely the Legislature's objective of assisting a class of persons
burdened by real estate tax increases not offset by any gain realized by
sale of their property, and thus the classification created by the statute
was constitutionally permissible. [532-534]

CIVIL ACTION commenced in the Superior Court Department
on June 7, 1983.

The case was heard by *Raymond R. Cross,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Thomas A. Barnico,* Assistant Attorney General, for the
Commissioner of Revenue.

*Peter Benjamin* for the plaintiffs.

LYNCH, J. In this class action,[2] the plaintiffs challenge the
constitutionality of a statute granting real estate tax abatements

---

[1] Board of Assessors of Springfield.

[2] The judge certified a class comprising all present and future applicants
for real estate tax abatements under G. L. c. 59, § 5, Seventeenth C, who
have been residents for at least ten years of a Massachusetts municipality

to persons over the age of seventy who have owned and occupied their homes for at least ten years. G. L. c. 59, § 5, Seventeenth C (1984 ed.).[3] The plaintiffs claim that the ten-year waiting period is an unconstitutional infringement of their right to travel. A judge of the Superior Court agreed and ordered that all class members be granted the abatement regardless of the length of time they have owned their homes.[4] The Commissioner of Revenue (Commissioner) appealed, and we transferred the case to this court on our own motion. We reverse.

The facts are as follows. The named plaintiffs, John and Catherine Lee, are both over the age of seventy. From 1943 to 1977, they owned and occupied a two-story, eight-room house in Springfield. In 1977, the Lees sold that house to a son and his wife, and purchased their present one-story, five-room house, also located in Springfield. The Lees have assets of less than $40,000, exclusive of their present home, which is assessed at 100% valuation of $42,600. On September 28, 1982, the Lees applied to the board of assessors of Springfield for a property tax abatement under G. L. c. 59, § 5, Seven-

---

which has accepted cl. Seventeenth C, and who were or will be denied an abatement solely because they have changed their domicil within that municipality during the previous ten years. While neither party has appealed this certification, both parties have expressed misgivings about the limited scope of the class. Since we assume, without deciding, that the rights of any larger class present the same constitutional questions, we need not decide whether the certified class is too restrictive. See *Milton* v. *Civil Serv. Comm'n,* 365 Mass. 368, 371 n.2 (1974). But see *Martinez* v. *Bynum,* 461 U.S. 321, 329 n.8 (1983).

[3] General Laws c. 59, § 5, states in part: "The following property shall be exempt from taxation . . . Seventeenth C Real estate, to the taxable valuation of two thousand dollars or the sum of one hundred and seventy-five dollars, whichever would result in an abatement of the greater amount of actual taxes due, of a surviving spouse or of any minor whose parent is deceased, occupied by such spouse, or minor as her or his domicile, or a person or persons over the age of seventy who has owned and occupied it as a domicile for not less than ten years." Only those persons whose assets do not exceed $40,000 (exclusive of the first $60,000 of value in owner-occupied real estate) are eligible for the abatement, but there are no income limitations. Cities and towns have the option to accept this clause.

[4] The judge allowed the plaintiffs' motion for attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 (1982).

teenth C (1984 ed.), which was denied. The Lees met all the requirements of that statute, except they have not owned and occupied their present home for the requisite ten-year period.

The Lees then instituted this suit in Superior Court, on their own behalf as well as on behalf of all those similarly situated, claiming that the durational requirement of cl. Seventeenth C is an unconstitutional infringement of their right to travel.[5] On March 8, 1984, the judge found that the statute has an impact on the "ability of the plaintiffs to obtain the necessities of life." Finding this impact "significant," and the right to travel "fundamental," the judge held that the durational requirement was subject to review by the "strict scrutiny" test, and therefore could be upheld only on a showing of a compelling State interest in that requirement. Finding no such State interest in this case, the judge held that the ten-year period "penalizes the fundamental right of interstate travel protected by the United States and Massachusetts constitutions," and therefore that it was unconstitutional. We disagree.

Although the Supreme Court has not held that the right to travel protected by the United States Constitution is applicable when only intrastate rights are involved, we assume, for the purposes of discussion, that the statute in question affects that right. "The right to travel and to move from one state to another has long been accepted, yet both the nature and the source of that right have remained obscure." *Zobel* v. *Williams*, 457 U.S. 55, 60 n.6 (1982). Nevertheless, the Supreme Court has generally reviewed right to travel cases under a standard similar to that applied to equal protection claims. *Id.* (right to travel involves "little more than a particular application of equal protection analysis"); *id.* at 67 (Brennan, J., concurring) ("right to travel achieves its most forceful expression in the context of equal protection analysis").[6] In equal protection cases, a

---

[5] The Commissioner moved to dismiss the complaint in the Superior Court on the ground that the plaintiffs failed to appeal the denial of the abatement to the Appellate Tax Board, as provided in cl. Seventeenth C. That motion was denied, and since the Commissioner no longer argues the point, we do not address it.

[6] If the right to travel is founded instead on the privileges and immunities clause of Article IV of the United States Constitution (see *Zobel* v. *Williams*,

classification involving a suspect group or a fundamental right must be supported by a compelling State interest. Cases not involving a suspect group or fundamental right need be supported only by a rational or conceivable basis. See, e.g., *Commonwealth* v. *King*, 374 Mass. 5, 21 (1977), and cases cited. While the right to travel is considered a fundamental right (see, e.g., *Jones* v. *Helms*, 452 U.S. 412, 418 [1981]), not every statute that affects the right to travel must be supported by a compelling State interest. Only those classifications that serve to *penalize* the exercise of that right are tested on that strict scrutiny basis. See *Memorial Hosp.* v. *Maricopa County*, 415 U.S. 250, 256 (1974); *Shapiro* v. *Thompson*, 394 U.S. 618, 634 & 638 n.21 (1969). See also *Milton* v. *Civil Serv. Comm'n*, 365 Mass. 368, 371 (1974). As the Supreme Court itself has realized, however, "[t]he amount of impact [on the right to travel] required to give rise to the compelling-state-interest test was not made clear." *Memorial Hosp.* v. *Maricopa County, supra* at 256-257. See *Milton* v. *Civil Serv. Comm'n, supra*.

The determination whether a particular statute imposes a "penalty" on the right to travel includes something more than merely deciding whether the statute denies some other fundamental right or the "necessities of life." *Zobel* v. *Williams, supra* at 64 & n.11. To determine what level of scrutiny to apply, courts have generally focused on the "nature of the benefit denied." *Fisher* v. *Reiser*, 610 F.2d 629, 635 (9th Cir. 1979), cert. denied, 447 U.S. 930 (1980). Only those statutes resulting in some significant effect on the right to travel will be deemed "penalties." Examples of such "penalties" include a one-year residency requirement to receive welfare benefits (*Shapiro* v. *Thompson, supra*); a one-year residency requirement to exercise the right to vote (*Dunn* v. *Blumstein*, 405 U.S. 330 [1972]); a one-year residency requirement to receive free nonemergency medical care (*Memorial Hosp.* v. *Maricopa County, supra*); a two-year residency requirement to use the

457 U.S. 55, 71-81 [1982] [O'Connor, J., concurring]), the plaintiffs' challenge to the statute is without foundation, since new and old residents of the State are treated without distinction. *Id.* at 76.

State's courts for divorce (*Fiorentino* v. *Probate Court*, 365 Mass. 13 [1974]). Less significant impositions on the right to travel have been upheld when supported by a rational or conceivable basis. See, e.g., *Milton* v. *Civil Serv. Comm'n, supra* (preferential civil service treatment for one-year residents); *Hawaii Boating Ass'n* v. *Water Transp. Facilities Div.*, 651 F.2d 661 (9th Cir. 1981) (lower mooring rates for one-year residents); *Kuhn* v. *Vergiels*, 558 F. Supp. 24 (D. Nev. 1982) (financial assistance for professional school predicated on five-year residence); *Sturgis* v. *Washington*, 368 F. Supp. 38 (W.D. Wash.), aff'd mem., 414 U.S. 1057 (1973) (lower tuition rates at State colleges for one-year residents); *Starns* v. *Malkerson*, 326 F. Supp. 234 (D. Minn. 1970), aff'd mem., 401 U.S. 985 (1971) (same).[7] Thus, "a restriction based on residency does not warrant strict scrutiny merely because it impinges to some extent on the right to travel." *Matter of Frazier*, 594 F. Supp. 1173, 1181 (E.D. La. 1984), citing *Memorial Hosp.* v. *Maricopa County, supra* at 256. See *Soto-Lopez* v. *New York City Civil Serv. Comm'n,* 755 F.2d 266, 278 (2d Cir. 1985) ("Merely having an effect on travel is not sufficient to raise an issue of constitutional dimension"); *Philadelphia Lodge No. 5, Fraternal Order of Police* v. *Philadelphia*, 599 F. Supp. 254, 258 (E.D. Pa. 1984) (only "unreasonable burdens" are penalties). This is simply an accommodation to common sense, for "[a]ny expense imposed on citizens crossing state lines but not imposed on those staying put could theoretically be deemed a penalty on travel; the toll exacted from persons crossing from Delaware to New Jersey by the Delaware Memorial Bridge is a 'penalty' on interstate travel in the most literal sense of all." *Memorial Hosp.* v. *Maricopa County, supra* at 284 (Rehnquist, J., dissenting). See *Huffman* v. *Montana Supreme Court*, 372 F. Supp. 1175, 1182 (D. Mont.), aff'd mem., 419 U.S. 955 (1974).

---

[7] But see *Sosna* v. *Iowa*, 419 U.S. 393, 406-407 (1975), where the Supreme Court did not invoke the penalty analysis to uphold a one-year residency requirement for access to a State's divorce courts, but instead applied "what appears to be an *ad hoc* balancing test." *Id.* at 419 (Marshall, J., dissenting).

In our view, the right to the real estate tax abatement at issue here simply does not rise to a level of interference with the right to travel that would justify the application of strict scrutiny. The plaintiffs have no right to a particular rate of taxation, and "States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." *Williams* v. *Vermont,* 472 U.S. 14, 22 (1985), quoting *Lehnhausen* v. *Lake Shore Auto Parts Co.,* 410 U.S. 356, 359 (1973). The State action in question here does not affect the right to travel in any significant way. It does not interfere with the "vitality of the principle of free interstate migration." *Zobel* v. *Williams, supra* at 67 (Brennan, J., concurring). It does not have a significant impact on the "necessities of life" (*Shapiro* v. *Thompson, supra* at 627), or on any other right or privilege. Nor are the plaintiffs in this case members of a group unable to protect their interests through the political process, the historical justification for the application of strict scrutiny. See *United States* v. *Carolene Prods. Co.,* 304 U.S. 144, 152-153 n.4 (1938); *Sklar* v. *Byrne,* 727 F.2d 633, 639 n.8 (7th Cir. 1984). Therefore, we must determine whether the statutory classification is supported by a rational basis. We conclude that G. L. c. 59, § 5, Seventeenth C, meets that test.

The Commissioner states that the local option abatement provisions of cl. Seventeenth C were enacted by St. 1981, c. 743, § 1, in response to inflationary increases in real estate values occurring in the 1970's, which led to increases in real estate tax assessments. The Legislature rationally could have concluded that persons over the age of seventy, many of whom are retired and who depend on fixed incomes, might have difficulty meeting these higher tax assessments. This problem has, if anything, been compounded by substantial increases in real estate values unrelated to inflation.[8] Of course, elderly

---

[8] See, e.g., U.S. Bureau of the Census, Statistical Abstract of the United States: 1984, 493 & 746 (104th ed. 1983) (prices of one-family houses in northeastern United States rose by approximately 20% more than the consumer price index from 1970 to 1981).

persons who *choose* to move to new, perhaps smaller and lower value, homes after they have retired and after their children have grown will receive the appreciated value of their home at the time of sale, which in most cases would reimburse them for any previous rise in real estate taxes. That is exactly the choice that the named plaintiffs in this case have made. However, the Legislature could have determined that some elderly persons, perhaps many, would greatly prefer to remain in their present homes. That class of persons is burdened with increasing real estate taxes not offset by a concomitant increase in their income, or by a recapture of the appreciated value by sale of the property. By easing their tax burden, the Legislature has attempted to make the option of remaining in their homes a more feasible one. We cannot say that cl. Seventeenth C is an irrational way to address this problem.[9] Indeed, it is apparent that cl. Seventeenth C was designed to make little or no impact on the right to travel, since it seems inconceivable that those elderly persons who do choose to move will not recoup substantially more from the sale of their homes than those who remain and receive the modest abatement.

It is true that, in a sense, the statute may result in the unequal distribution of benefits. However, the classification made by cl. Seventeenth C, between those who move and those who stay and receive the abatement, reflects preexisting differences; it does not establish new classes that are different only in the way that the statute treats them. Compare *Williams* v. *Vermont*, 472 U.S. 14, 27 (1985). Those who sell and those who do not are not similarly situated. One class has received a capital gain within the past ten years, reflecting the increased value of their prior homes. The second class has not received such a capital gain and thus has not received any of the appreciated value of their homes.

---

[9] The plaintiffs argue that because cl. Seventeenth C also provides an identical abatement to "a surviving spouse or any minor whose parent is deceased," without any durational requirement, the policy outlined cannot have been the Legislature's intention. But the plaintiffs do not challenge those exemptions, and we therefore need not attempt to ascertain the legislative intent in providing them.

Nor does the statute create "fixed, permanent distinctions between an ever-increasing number of perpetual classes." *Zobel* v. *Williams, supra* at 59. See *Hooper* v. *Bernalillo County Assessor,* 472 U.S. 612, 623 (1985). Instead, once any person, new resident or old resident, has suffered the harm determined by the Legislature to exist, that person will be eligible for the benefit designed by the Legislature to offset that harm.

We hold that the statute "has a fair and rational relationship to the object sought to be accomplished." *Seiler Corp.* v. *Commissioner of Revenue,* 384 Mass. 635, 639 (1981). The plaintiffs' right to travel, guaranteed by the United States Constitution,[10] has not been infringed. Therefore, we reverse the judgment entered in the Superior Court, vacate the award of attorneys' fees and costs under 42 U.S.C. § 1988, and order that judgment be entered for the defendants.

*So ordered.*

---

[10] The plaintiffs' brief refers in passing to the Massachusetts Constitution as a basis for their claim. However, "it contains no separate discussion of Massachusetts constitutional principles . . . [so that] we review the . . . claim solely on the basis of an alleged violation of Federal constitutional principles. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975)." *Atterberry* v. *Police Comm'r of Boston,* 392 Mass. 550, 555 (1984), cert. denied sub nom. *Atterberry* v. *Jordan,* 469 U.S. 1208 (1985). Cf. *Commonwealth* v. *Ford,* 394 Mass. 421, 432 (1985) (Lynch, J., dissenting).