Aronson *v*. Commonwealth.

RACHEL ARONSON[1] *VS.* COMMONWEALTH.

Hampden.    February 5, 1987. — December 14, 1987.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Taxation*, Income tax. *Interstate Commerce. Constitutional Law*, Taxation, Equal protection of laws, Interstate commerce. *Administrative Law*, Exhaustion of remedies. *Practice, Civil*, Standing, Class action, Summary judgment.

The question of a taxpayer's standing to challenge the constitutionality of a tax she had paid could not be raised by the Commonwealth for the first time on appeal. [247]

The tax of ten percent on interest earned by Massachusetts residents on money deposited in non-Massachusetts financial institutions was a tax on interstate commerce, with more than minimal or speculative impact, such as to evoke commerce clause scrutiny. [247-249]

General Laws c. 62 §§ 2 (*b*) and 4, which provide for a ten percent tax rate on interest earned by Massachusetts residents on money deposited in non-Massachusetts financial institutions and for a five percent rate on money deposited in Massachusetts institutions, discriminates against interstate commerce. [250]

In an action brought by a taxpayer to challenge the constitutionality of an income tax that discriminated against interstate commerce, the Commonwealth was not entitled to summary judgment where its affidavits failed to demonstrate the required "close fit" between the asserted statutory purpose of requiring interstate commerce to pay its way and the statutory means of assessing higher taxes on out-of-State interest income. [250-253]

In an action raising important questions about the constitutionality of a tax statute with respect to interstate commerce, the taxpayer was not entitled to summary judgment where the record did not sufficiently demonstrate that there was *not* a legitimate State purpose for the statute. [253]

On claims challenging the constitutionality of a tax on the ground that it violated the equal protection clause of the United States Constitution and art. 44 of the Amendments to the Massachusetts Constitution, summary judgment was properly entered for the Commonwealth on the basis of its uncontroverted affidavits. [253-254]

---

[1] A minor, by Pamela Aronson, her mother.

The record of a civil action was insufficient for this court to consider the plaintiff's argument that she should have been given an opportunity to obtain further discovery before summary judgment was entered against her. [254-255]

The court was of opinion that a plaintiff class should not be certified in an action seeking a declaration that a tax statute was unconstitutional and a refund of any tax collected unlawfully, where the matter had not been first considered by the Appellate Tax Board. [255]

CIVIL ACTION commenced in the Superior Court Department on March 20, 1985.

The case was heard by *Elizabeth A. Porada*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Robert Aronson* for the plaintiff.

*Thomas A. Barnico,* Assistant Attorney General, for the Commonwealth.

O'CONNOR, J. Under G. L. c. 62, §§ 2 (*b*) and 4 (1986 ed.), interest earned by Massachusetts residents on money deposited in non-Massachusetts financial institutions is taxed at the rate of ten percent, while interest earned on money deposited in Massachusetts financial institutions is generally taxed at a five percent rate.[2,3] Aronson alleges, and the Com-

---

[2] General Laws c. 62, § 4, as amended by St. 1975, c. 634, § 41, provides in pertinent part that: "Residents shall be taxed on their taxable income . . . as follows: (*a*) Part A taxable income shall be taxed at the rate of ten per cent. (*b*) Part B taxable income shall be taxed at the rate of five per cent."

General Laws c. 62, § 2 (*b*) (1), as amended by St. 1986, c. 488, § 26, defines Part A gross income as "the total interest, dividends and capital gain net income included in Massachusetts gross income, other than: (A) Interest and dividends from savings deposits, including term and time deposits having a principal amount of less than one hundred thousand dollars, savings accounts, share or share savings accounts in any savings or cooperative bank, trust company or credit union incorporated in or chartered by the commonwealth; in any national bank, federal savings and loan association, federal savings bank or federal credit union located in the commonwealth; in any banking company or Morris Plan company subject to chapter one hundred and seventy-two A; in any savings or loan association under the supervision of the commissioner of banks. (B) Interest from loans made in the course of business by persons subject to the provisions of sections

monwealth concedes, that she was taxed at the higher rate on interest income earned in 1983 because her money was in a non-Massachusetts bank. The complaint requests a declaratory judgment that the tax differential is unconstitutional and, in addition, an order requiring the refund of any tax collected unlawfully. In the trial court, the plaintiff sought leave to maintain the action as a class action on behalf of all residents of the Commonwealth who have paid the higher rate on interest earned from non-Massachusetts financial institutions. There has been no ruling on the request for class certification.

Both parties moved for summary judgment. Aronson's motion was unaccompanied by affidavits or other supporting materials. The Commonwealth's motion was supported by two affidavits of State officials generally asserting audit, verification, and collection problems associated with non-Massachusetts income earned by Massachusetts residents. We discuss those affidavits more fully below. A judge denied Aronson's motion and allowed the Commonwealth's motion. The judge concluded that the differential tax rates do not violate the equal protection, due process, privileges and immunities, or commerce clauses of the United States Constitution or art. 44 of the Amendments to the Massachusetts Constitution. Aronson

---

seventy to eighty-five, inclusive, of chapter one hundred and forty." (A 1985 amendment, St. 1985, c. 583, added the words "federal savings bank"; the 1986 amendment merely changed "net capital gain" to "capital gain net income." The statute is therefore the same in all material respects as it was in 1983.)

That statute defines Part B gross income as "the remainder of the Massachusetts gross income."

"Part A taxable income" and "Part B taxable income" is computed in two stages. "Part A gross income" is reduced to "Part A adjusted gross income" pursuant to G. L. c. 62, § 2 (*c*), while "Part B gross income" is reduced to "Part B adjusted gross income" pursuant to G. L. c. 62, § 2 (*d*). General Laws c. 62, § 3 (A), sets forth how "Part A adjusted gross income" is reduced to "Part A taxable income," and G. L. c. 62, § 3 (B), sets forth how "Part B adjusted gross income" is reduced to "Part B taxable income."

[3] Interest on savings deposits in Massachusetts banks where the principal is $100,000 or more is also taxed at a ten per cent rate. See G. L. c. 62, § 2 (*b*) (1), note 2, *supra*.

appealed and we granted her application for direct appellate review. We now affirm the denial of Aronson's summary judgment motion, but we reverse the judgment for the Commonwealth and remand the case to the Superior Court for further proceedings limited to the commerce clause claim.

On appeal, Aronson challenges the allowance of the Commonwealth's summary judgment motion and the denial of her own motion on the grounds that the tax violates the equal protection and commerce clauses of the United States Constitution and art. 44 of the Amendments to the Massachusetts Constitution. As a preliminary to discussion of these issues, we observe that the Commonwealth has not argued that we should decline to reach them due to Aronson's failure to exhaust administrative remedies. Furthermore, we recognize that this case raises important public questions which ought to be resolved. *Polaroid Corp.* v. *Commissioner of Revenue,* 393 Mass. 490, 491 n.3 (1984). *Andover Sav. Bank* v. *Commissioner of Revenue,* 387 Mass. 229, 232-233 (1982). However, the Commonwealth has argued in a footnote to its brief, that the "[p]laintiff cannot assert the injury, if any, suffered by non-Massachusetts banks," citing *Valley Forge Christian College* v. *Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472 (1982). There is no indication in the record that at the trial level the Commonwealth raised any question about the plaintiff's standing to challenge the constitutionality of the tax differential provided by G. L. c. 62, §§ 2 (*b*) and 4. The Commonwealth is not entitled to raise that question for the first time on appeal. *Lyon* v. *Bloomfield,* 355 Mass. 738, 743 (1969). *Henchey* v. *Cox,* 348 Mass. 742, 747 (1965). In any event, a plaintiff who alleges that she has been forced to pay an unconstitutional tax alleges an injury personal to her, and she has "the right to test in court the questions of constitutionality and of injury." *Luscomb* v. *Bowker,* 334 Mass. 468, 475-476 (1956). See *Boston Stock Exch.* v. *State Tax Comm'n,* 429 U.S. 318, 320 n.3 (1977).

We first consider whether the challenged tax violates the commerce clause of the United States Constitution. The commerce clause, art. 1, § 8, cl. 3, gives Congress the power "[t]o

regulate Commerce with foreign Nations, and among the several States . . . ." This explicit grant of power to Congress also serves as an implicit restraint on the power of the States to regulate interstate commerce. *Lewis* v. *BT Inv. Managers, Inc.*, 447 U.S. 27, 35 (1980). Once a State tax is subject to commerce clause scrutiny, it will be upheld only if it meets the four part test of *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 279 (1977): the tax (1) must be applied to an activity with a substantial nexus with the taxing State; (2) must be fairly apportioned; (3) may not discriminate against interstate commerce; and (4) must be fairly related to the services provided by the State.

Before the *Brady* test applies, however, the tax must have sufficient effect on interstate commerce to evoke commerce clause scrutiny. See *Andover Sav. Bank* v. *Commissioner of Revenue, supra* at 248. Therefore, we must address that question first. Initially, we note that "[a]ll objects of interstate trade merit Commerce Clause protection; none is excluded by definition at the outset." *Philadelphia* v. *New Jersey,* 437 U.S. 617, 622 (1978). In *Boston Stock Exch.* v. *State Tax Comm'n,* 429 U.S. 318 (1977), the Court held unconstitutional a State law that imposed a higher tax on securities transactions occuring outside the State than on most such transactions within the State. Implicit in the Court's decision was the notion that investment funds, including deposits in savings banks, are objects of commerce.

There can be no doubt that the commerce in savings deposits involved in this case is "interstate," since Massachusetts residents and out-of-State banks are involved. Furthermore, the fact that the tax is levied on taxpayers' income, rather than on the interstate transaction directly, is irrelevant. "The label by which a tax is known should not control the constitutional principles by which it is judged." *George S. Carrington Co.* v. *State Tax Comm'n,* 375 Mass. 549, 552 n.3 (1978). See *Maryland* v. *Louisiana,* 451 U.S. 725, 756 (1981); *Dominion Nat'l Bank* v. *Olsen,* 771 F.2d 108, 118 (6th Cir. 1985) (Contie, J., concurring) ("the fact that the challenged tax is assessed against receipt of income in Tennessee rather than against an interstate transaction . . . is irrelevant").

It is clear, then, that the challenged tax is a tax on interstate commerce. That leads us to inquire whether the impact of the tax rate differential on interstate commerce is more than minimal or speculative. Relying on *Andover Sav. Bank* v. *Commissioner of Revenue, supra* at 245-250, the judge concluded that "[a]ny burden on interstate commerce is too speculative to evoke the provision of the Commerce Clause." We agree with the principle that the burden on interstate commerce imposed by a particular tax may be so speculative that the commerce clause is not implicated. However, the tax in question is not such a tax.

*Andover Sav. Bank* v. *Commissioner of Revenue, supra,* involved a State law that allowed banks, when computing the deposits portion of a bank excise tax, to deduct the unpaid balance on loans secured by real estate taxable in Massachusetts or by certain real estate in contiguous States, but not loans secured by other real estate. The banks asserted that this geographical limitation discouraged local banks from lending in other States, thus discriminating against interstate commerce. In discussing whether the tax unlawfully protected local borrowers at the expense of out-of-State borrowers, this court noted that any burden on out-of-State borrowers was too speculative to evoke the prohibitions of the commerce clause. We reasoned that the deposits tax involved in that case appeared to be too insignificant to discourage out-of-State lending by Massachusetts banks, and that, even if it did discourage such lending, out-of-State lenders would probably fill any gap left by Massachusetts banks. *Id.* at 248.

The circumstances in *Andover* were significantly different from those in the present case. Therefore, the analysis in Andover is inappropriate here. Unlike in *Andover,* the doubling of the tax rate solely because of the location of the taxpayer's deposits, challenged in this case, clearly has a protectionist effect in favor of local financial institutions. "Such a large tax penalty . . . cannot be deemed to have no practical effect on interstate commerce" (footnote omitted). *Boston Stock Exch.* v. *State Tax Comm'n, supra* at 334. Therefore, commerce clause scrutiny is required, and we turn to the four-part test set forth in *Complete Auto Transit, Inc.* v. *Brady, supra* at 279.

Aronson focuses, as do we, on the third part of that test — the requirement that taxes must not disciminate against interstate commerce. "The principal objects of dormant Commerce Clause scrutiny are statutes that discriminate against interstate commerce." *CTS Corp.* v. *Dynamics Corp. of Am.*, 481 U.S. 69, 87 (1987). The Supreme Court has repeatedly struck down State statutes that have "encouraged the development of local industry by means of taxing measures that imposed greater burdens on economic activities taking place outside the State than were placed on similar activities within the State." *Westinghouse Elec. Corp.* v. *Tully*, 466 U.S. 388, 403-404 (1984). See *Armco Inc.* v. *Hardesty*, 467 U.S. 638, 642 (1984). States may not discriminate against interstate commerce in favor of in-State interests by "foreclos[ing] tax-neutral decisions." *Westinghouse Elec. Corp.* v. *Tully*, *supra* at 406, quoting *Boston Stock Exch.*, *supra* at 331. Here, although the statute may well ultimately withstand constitutional scrutiny, facially it discriminates in favor of in-State banks in the competition for Massachusetts deposits, and thereby forecloses tax-neutral decisions. See *Dominion Nat'l Bank*, *supra* at 119 (Contie, J., concurring). Compare *Towle* v. *Commissioner of Revenue*, 397 Mass. 599, 606 (1986); *Commonwealth* v. *Allied Bond & Collection Agency*, 394 Mass. 608, 613-615, dismissed for want of a substantial Federal question, 474 U.S. 991 (1985). Therefore, further inquiry is necessary.

While a legislative intent to favor local interests is almost invariably fatal to any statute burdening interstate commerce, see *Bacchus Imports, Ltd.* v. *Dias*, 468 U.S. 263, 271-273 (1984); *Westinghouse Elec. Corp.* v. *Tully*, *supra* at 405; *Boston Stock Exch.*, *supra* at 329; *Dominion Nat'l Bank*, *supra* at 117 (Contie, J., concurring); it is axiomatic that "interstate commerce may constitutionally be made to pay its way." *Maryland* v. *Louisiana*, 451 U.S. 725, 754 (1981). Therefore, differentials in State administrative costs between intrastate and interstate commerce may justify differential tax treatment. See L. Tribe, American Constitutional Law § 6-16, at 355 (1978) (State tax burdening interstate enterprises more than local in-

terests not unconstitutionally discriminatory if State can show additional administrative costs in taxing out-of-State business- es). Cf. *Maryland* v. *Louisiana, supra* at 759 (a seemingly discriminatory tax may be upheld if tax is actually "compensa- tory," and, when viewed in light of other taxes, the challenged tax simply provides for equal treatment between local and interstate commerce).

However, "once a state law is shown to discriminate against interstate commerce 'either on its face or in practical effect,' the burden falls on the State to demonstrate both that the statute 'serves a legitimate local purpose,' and that this purpose could not be served as well by available nondiscriminatory means." *Maine* v. *Taylor,* 477 U.S. 131, 138 (1986), quoting *Hughes* v. *Oklahoma,* 441 U.S. 322, 336 (1979). In meeting the first prong of the test enunciated in *Maine* v. *Taylor, supra,* the demonstration that the statute serves a legitimate local purpose, the State must show a "close fit" between its asserted (nondis- criminatory) purpose, and the facially discriminatory statute; the statute must be "narrowly tailored" to serve the State's purpose. *Sporhase* v. *Nebraska ex rel. Douglas,* 458 U.S. 941, 957-958 (1982). Furthermore, the "proffered justification for any local discrimination . . . must be subjected to 'the strictest scrutiny.'" *Maine* v. *Taylor, supra* at 144, quoting *Hughes* v. *Oklahoma, supra* at 337. When subjected to that scrutiny, the State's affidavits in this case, even though unmet by conflicting affidavits, do not entitle it to summary judgment.

The Commonwealth's motion for summary judgment was supported by an affidavit of Sandra Steele, associate deputy commissioner of the enforcement division of the Department of Revenue, and by an affidavit of Bernard Crowley, chief of the multistate audit bureau of the Department of Revenue. Steele's affidavit concerns collection costs. It states that the Department of Revenue "has the authority to levy upon any property (e.g., real estate, bank accounts) located in the Com- monwealth to satisfy an unpaid liability owed by a taxpayer. However, if a taxpayer's only asset is a non-Massachusetts bank account or other property located outside the Common-

wealth, the Department of Revenue cannot satisfy an unpaid liability of the taxpayer either by levying upon the non-Massachusetts bank account or by resort to any other collection remedy provided in G. L. c. 62C. . . . Thus, the collection of taxes asessed against taxpayers whose assets are located outside the Commonwealth is significantly more difficult than collection against taxpayers whose assets are located within the Commonwealth."

Crowley's affidavit addresses auditing costs. It focuses on the "considerable expense" incurred in establishing five out-of-State regional offices "to conduct audits of the tax returns of nonresident taxpayers and resident taxpayers with income derived from sources both within and without Massachusetts . . . [and] to give the Department of Revenue a visible presence outside of Massachusetts in hopes of achieving increased voluntary compliance." Crowley's affidavit states that "the administrative and travel costs associated with out-of-state audits are much higher than those of an in-state audit," and, in addition, notes the Department's lack of statutory power to compel out-of-State third-parties to comply with its subpoenas, thereby making it more difficult to audit Massachusetts taxpayers by cross checking the records of third parties located outside the Commonwealth.

We note that the Steele and Crowley affidavits are not limited to perceived costs associated with collecting taxes on out-of-State *interest* income alone, or to the cost of auditing just out-of-State *interest* income, but rather include collecting and auditing expenses related to *all* out-of-State income and nonresident taxpayers. The Commonwealth does not explain, through the affidavits or in any other way, why out-of-State income other than interest income is not taxed at a higher rate than corresponding types of in-State income. If only taxpayers with out-of-State interest income are forced to bear additional auditing and collection costs, then on this record there is "no reason to believe that the State's interest . . . has been significantly or evenhandedly advanced by the statutory means . . . ." *Lewis* v. *BT Inv. Managers, Inc.*, *supra* at 44. In any event, the Steele and Crowley affidavits are almost entirely conclusory

in nature. They lack the specificity necessary to establish as a matter of law that there is a reasonable relationship between the costs to which they refer and a two to one tax differential. Therefore, the Commonwealth has failed to demonstrate the required "close fit" between the asserted statutory purpose of requiring interstate commerce to pay its way and the statutory means of assessing higher taxes on out-of-State interest income. Thus, the Commonwealth is not entitled to summary judgment in its favor on the commerce clause claim.

We turn now to Aronson's summary judgment motion. As we have said, although G. L. c. 62, §§ 2 (*b*) and 4, is facially discriminatory, it does not necessarily follow that the statute violates the commerce clause. The statute's facial discrimination merely shifts the burden to the Commonwealth to justify the statute and, on the present record, the Commonwealth has not met that burden. On the other hand, however, neither does the record sufficiently demonstrate that the statute cannot be justified so as to warrant summary judgment in Aronson's favor. We are mindful of Aronson's arguments focusing on the availability to the Commonwealth of information concerning out-of-State interest income earned by Massachusetts residents through the Internal Revenue Service and other sources, but the record is sparse, the Commonwealth has at least posited a legitimate State purpose for the statute, and the constitutional questions this case presents are important. Therefore, we decline to order summary judgment for Aronson. See 10A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2732.2, at 340 (2d ed. 1983) (cases involving alleged violations of constitutional rights or important public issues are frequently unsuitable for summary judgment; courts often require a fuller record to decide these issues properly).

Although we remand the case for trial on the commerce clause claim, we affirm the grant of summary judgment to the Commonwealth on the other constitutional claims raised in the plaintiff's complaint. The plaintiff has not challenged the grant of summary judgment in favor of the Commonwealth on the due process and privileges and immunities claims, and she has therefore waived any right to seek appellate review of those

issues. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). However, Aronson does contest on appeal the granting of the Commonwealth's motion for summary judgment as to her equal protection and art. 44 claims. In light of the Commonwealth's rationale and supporting affidavits, we are satisfied that summary judgment was properly granted as to the equal protection claim. "So long as any basis of fact can be reasonably conceived showing that the distinction made by a tax statute has a fair and rational relationship to the object sought to be accomplished, the legislative classification is not violative of equal protection principles." *Seiler Corp.* v. *Commissioner of Revenue*, 384 Mass. 635, 639 (1981). See *Madden* v. *Kentucky*, 309 U.S. 83, 87-90 (1940).

The relevant portion of art. 44 is as follows: "Full power and authority are hereby given and granted to the general court to impose and levy a tax on income . . . . Such tax may be at different rates upon income derived from different classes of property, but shall be levied at a uniform rate throughout the commonwealth upon incomes derived from the same class of property." "[U]nder art. 44 the Legislature has considerable discretion in designating different classes of property for the purpose of setting tax rates . . . . That discretion is not unlimited, however. Article 44 requires uniformity of tax rates with respect to income derived 'from the *same kind* of property' (emphasis added). . . . Properties are of the same kind unless there are 'actual underlying differences' between them" (citations omitted). *Salhanick* v. *Commissioner of Revenue*, 391 Mass. 658, 662 (1984).

We agree with the Commonwealth that the collection and verification difficulties outlined in the Steele and Crowley affidavits, which were not controverted on the record, constitute "actual underlying differences" between in-State and out-of-State interest income. For that reason, we affirm the grant of summary judgment for the Commonwealth as to the art. 44 claim.

The plaintiff's argument that she should have been given an opportunity to obtain further discovery before the grant of summary judgment to the Commonwealth is not persuasive.

Rule 56 (f) of Mass. R. Civ. P., 365 Mass. 825 (1974), requires the plaintiff to file an affidavit explaining "that [the respondent] cannot for reasons stated present by affidavit facts essential to justify his opposition." *Id*. The plaintiff did not do so.

The affidavit submitted by the plaintiff in support of her request to continue was utterly deficient. Even if, favorably to the plaintiff, we regard the memorandum alluded to in the affidavit as incorporated in the affidavit by reference, we still cannot discern whether the affidavit was sufficient for purposes of rule 56 because the plaintiff failed to include the memorandum in the record appendix. Memoranda of law filed in the trial court, when relevant to the case on appeal, must be included in the appendix. Mass. R. A. P. 18 (a), as amended through 392 Mass. 1106 (1984). Otherwise, "the court may decline to permit the parties to refer to portions of the record omitted from the appendix." *Id*. We have insufficient information to conclude that the judge abused her discretion.

The judge did not pass on Aronson's request that a class be certified in this proceeding. We add a comment on the intended class action aspect of this proceeding because at some stage the question may be brought forward. It is one thing to tolerate, outside normal administrative procedures, an action for declaratory relief involving one taxpayer if the issue is important and of general applicability, and thus we have not always required that the matter first be decided by the Appellate Tax Board. Where, however, an attempt is made to obtain refunds of substantial amounts of money on behalf of numerous unidentified taxpayers, the procedures of the administrative process should not be bypassed. Tax collectors and other public officials are entitled to know what portion of collected revenues is subject to challenge and are entitled to insist on adherence to fixed schedules for timely applications for abatement and for other steps in the administrative process. We find unacceptable such an open-ended contingent liability based on an action for declaratory relief. A class should not be certified in actions of this character.

The order denying Aronson's motion for summary judgment is affirmed. The judgment in favor of the Commonwealth is

reversed, and the case is remanded for a trial limited to the commerce clause claim.

*So ordered.*