PERINI CORPORATION & others[1] *vs.* COMMISSIONER OF
REVENUE.

Suffolk. January 10, 1995. - March 22, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Constitutional Law,* Taxation, Commerce clause. *Taxation,* Corporate
excise.

The court concluded that certain provisions of the corporate excise statute,
namely, G. L. c. 63, § 30 (8) and (9), sufficiently affect interstate com-
merce to evoke scrutiny under the commerce clause of the United
States Constitution. [766-767]

General Laws c. 63, § 30 (8) and (9), which defines the taxable net worth
of domestic and foreign intangible property corporations for purposes of
imposing a corporate excise tax, facially discriminates against interstate
commerce in violation of the commerce clause of the United States
Constitution by treating domestic corporations more favorably than ei-
ther foreign corporations or domestic corporations owning foreign sub-
sidiaries [767-770], without advancing any legitimate local purpose
[771-772].

The matter of an award of attorney's fees under 42 U.S.C. §§ 1983 and
1988, to corporate taxpayers who prevailed in a constitutional challenge
to certain provisions of the State corporate excise statute was remanded
to the single justice for consideration and decision in light of the grant
of certiorari by the United States Supreme Court in the case of *Private
Truck Council of Am., Inc.* v. *Oklahoma Tax Comm'n,* 879 P.2d 137
(Okla. 1994) (per curiam), cert. granted, 115 S. Ct. 714 (1995). [772-
773]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on September 24, 1993.

The case was reported by *O'Connor, J.*

*Kenneth A. Cohen* for the plaintiffs.

---

[1]Perini Land and Development Corporation, Dynatech Corporation, and
Neworld Bancorp, Inc.

*Thomas A. Barnico*, Assistant Attorney General, for the defendant.

NOLAN, J. This case concerns the constitutionality of certain portions of the corporate excise statute, namely, G. L. c. 63, § 30 (8) and (9) (1992 ed.), which define the taxable net worth of domestic and foreign intangible property corporations. The challenged provisions allow a domestic intangible property corporation to deduct from its taxable net worth the value of a subsidiary of which it owns 80% or more of the voting stock, but only if that subsidiary is incorporated in Massachusetts. A foreign intangible property corporation may deduct from its taxable net worth the value of a subsidiary of which it owns 80% or more of the voting stock, but only if that subsidiary is incorporated outside of Massachusetts and does no business in Massachusetts. The plaintiffs allege that the excise discriminates against interstate commerce in violation of the commerce clause of the United States Constitution, and also that the excise discriminates on the basis of domicil in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. The plaintiffs commenced this action in the county court pursuant to G. L. c. 214, § 1 (1992 ed.); G. L. c. 231A, § 1 (1992 ed.); and 42 U.S.C. § 1983 (1988), seeking declaratory and injunctive relief, and attorney's fees pursuant to 42 U.S.C. § 1988 (1988). A single justice of this court reserved and reported the case to the full court based on the pleadings and the statement of agreed facts. We conclude that the challenged provisions of the corporate excise, G. L. c. 63, § 30 (8) and (9), facially discriminate against interstate commerce in violation of the commerce clause.[2] We remand the matter of attorney's fees to the single justice.

---

[2]Each plaintiff has applied to the Department of Revenue for abatement of the corporate excise which it paid in prior tax years. Abatement applications which have been denied are currently being appealed to the Appellate Tax Board. We do not consider whether the plaintiffs are entitled to abatements as this issue is currently pending before the board and should be decided there. See *Space Bldg. Corp.* v. *Commissioner of Revenue*, 413 Mass. 445, 446 n.1 (1992).

1. *Constitutionality of excise.* We outline briefly the structure of the corporate excise as applied to both domestic and foreign intangible property corporations.[3] Massachusetts imposes a corporate excise on domestic corporations "for the right . . . to exist as such an organization and for the enjoyment under the protection of the laws of the commonwealth, of the powers, rights, privileges and immunities" derived from its corporate existence and operation. G. L. c. 63, § 32 (1992 ed.). See G. L. c. 63, § 39 (1992 ed.), as to foreign corporations. Both domestic and foreign corporations "exercising [their] charter[s], or qualified to do business or actually doing business in the commonwealth," must pay the excise. §§ 32, 39. The excise is measured by a percentage of a corporation's net worth plus a percentage of the corporation's net income. *Id.*

For domestic intangible property corporations, net worth is calculated according to the definition set forth in G. L. c. 63, § 30 (8).[4] Under this provision, a domestic corporation may exclude from its taxable net worth the value of its investment in a subsidiary corporation of which it owns 80% or more of the voting stock, but only if that subsidiary is incorporated in Massachusetts. A subsidiary incorporated outside of Massachusetts, is not excludable from the net worth calculation.

For foreign intangible property corporations, a different net worth definition applies.[5] Under G. L. c. 63, § 30 (9), a foreign corporation may exclude from its taxable net worth the value of its investment in a subsidiary of which it owns

---

[3]An "[i]ntangible property corporation," is defined in G. L. c. 63, § 30 (11) (1992 ed.), as "a corporation whose tangible property situated in the commonwealth . . . and not subject to local taxation is less than ten per cent of . . . its total assets . . . less those assets as are situated in the commonwealth . . . and are subject to local taxation."

[4]"Domestic corporations" are defined in G. L. c. 63, § 30 (1) (1992 ed.), as "every corporation organized under or subject to [c. 156, c. 156A, c. 156B, or c. 180] which has privileges, powers, rights or immunities not possessed by individuals or partnerships."

[5]"Foreign corporations" are defined in G. L. c. 63, § 30 (2) (1992 ed.), as "every corporation, association, or organization established, organized or chartered under laws other than those of the commonwealth."

80% or more of the voting stock, but only if that subsidiary does not do business in Massachusetts. The Commissioner of Revenue (commissioner) has construed this provision to mean that subsidiaries are excludable only if they are not doing business in Massachusetts and they are incorporated outside of Massachusetts.

The plaintiffs, Perini Corporation (Perini), Perini Land and Development Corporation (PL&D), Dynatech Corporation (Dynatech), and Neworld Bancorp, Inc. (Neworld), are all intangible property corporations as defined in G. L. c. 63, § 30 (11). Each plaintiff conducts business in Massachusetts and is subject to the annual corporate excise. Each plaintiff is also a parent corporation which owns 80% or more of the voting stock of one or more subsidiaries.

Two plaintiffs, Perini and Dynatech, are Massachusetts corporations with subsidiaries incorporated both in and outside of Massachusetts. Many of the subsidiaries owned by these corporations either do business in Massachusetts or are incorporated in Massachusetts, and as such, must also pay the annual corporate excise. Under the terms of § 30 (8), Perini and Dynatech have been able to exclude from their taxable net worth the value of their Massachusetts subsidiaries, but not the value of their foreign subsidiaries.

The other two plaintiffs, PL&D and Neworld, are both foreign corporations each of which wholly owns a Massachusetts subsidiary. Because PL&D and Neworld are foreign corporations, neither corporation has been able to exclude from its taxable net worth the value of its Massachusetts subsidiary. G. L. c. 63, § 30 (9).

Before considering whether the challenged excise violates interstate commerce, we consider whether the excise has a sufficient effect on interstate commerce to evoke commerce clause scrutiny. *Aronson* v. *Commonwealth*, 401 Mass. 244, 248 (1987), cert. denied, 488 U.S. 818 (1988). The plaintiffs are parent corporations which currently conduct business in Massachusetts. The plaintiffs own subsidiaries located both in and outside of Massachusetts. "By its nature, a unitary business is characterized by a flow of value among its compo-

nents." *Kraft Gen. Foods, Inc.* v. *Iowa Dep't of Revenue & Fin.*, 505 U.S. 71, 76 (1992). The flow of value between the plaintiffs and their foreign subsidiaries clearly constitutes interstate commerce. This flow includes not only the acquisition of foreign subsidiaries, but also the flow of dividends, employee benefits, insurance, and other services from parent corporations to their subsidiaries.[6]

Having concluded that the excise has impact on interstate commerce, we turn next to the question whether the challenged provisions are unconstitutional under the commerce clause, which provides that "congress shall have power . . . to regulate commerce . . . among the several states." "Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc.* v. *Department of Envtl. Quality*, 114 S. Ct. 1345, 1349 (1994). The first step in analyzing a law subject to judicial scrutiny under the negative commerce clause is to determine whether the law regulates evenhandedly with only incidental effects on interstate commerce, or whether it discriminates against interstate commerce. *Id.* at 1350. The term "discrimination" as used in this context means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* The purpose of, or justification for, a law has no bearing on whether it is facially discriminatory. "If a restriction on commerce is discriminatory, it is virtually *per se* invalid." *Id.*

---

[6] The effect on interstate commerce is best demonstrated by examining Dynatech's business. Dynatech is a parent corporation currently owning over forty subsidiaries incorporated and doing business in various States and countries. Dynatech's business includes the acquisition, incorporation, management, and ownership of high technology companies. When choosing which companies to purchase, Dynatech must consider the different tax treatments that will apply according to the State of incorporation of each company.

We conclude that the challenged provisions of the corporate excise facially discriminate against interstate commerce. Under G. L. c. 63, § 30 (8), a domestic parent corporation may exclude from its taxable net worth the value of its subsidiary, but only if that subsidiary is also incorporated in Massachusetts. This provision draws a distinction solely on the basis of the domicil of the subsidiary, and treats a domestic corporation more favorably if it chooses to acquire a domestic subsidiary, rather than a foreign subsidiary. Consequently, the statutory scheme imposes a heavier burden on domestic corporations who own *foreign* subsidiaries than on domestic corporations who own *domestic* subsidiaries. See *Kraft Gen. Foods, Inc.* v. *Iowa Dep't of Revenue & Fin.*, *supra* at 77 (Iowa statute that treated dividends received from foreign subsidiaries less favorably than those received from domestic subsidiaries facially discriminated against foreign commerce in violation of foreign commerce clause).

The challenged deductions also create an incentive for domestic corporations to acquire in-State subsidiaries, and penalize corporations that choose to cross State lines. State laws that tax a transaction or incident more heavily when it crosses State lines than when it occurs entirely within the State have repeatedly been struck down as discriminatory. *Oregon Waste Sys., Inc.* v. *Department of Envtl. Quality*, *supra* at 1350, quoting *Chemical Waste Management, Inc.* v. *Hunt*, 504 U.S. 334, 342 (1992). In *Healy* v. *Beer Inst., Inc.*, 491 U.S. 324, 326 (1989), a Connecticut statute requiring out-of-State shippers of beer to affirm that their posted prices for products sold to Connecticut wholesalers were no higher than the prices at which those products were sold in bordering States, was struck down as violative of the commerce clause. The Supreme Court held that the statute on its face discriminated against brewers and shippers of beer engaged in interstate commerce. *Id.* at 341. The Court stated: "This discriminatory treatment establishes a substantial disincentive for companies doing business in Connecticut to engage in interstate commerce, essentially penalizing Connecticut brewers if they seek border-state markets and out-

of-state shippers if they choose to sell both in Connecticut and in a border State." *Id.* As in *Healy* v. *Beer Inst., Inc.,* *supra,* the deductions at issue create a substantial disincentive for domestic parent corporations to engage in interstate commerce.

The challenged provisions also treat foreign parent corporations less favorably than similarly situated domestic parent corporations. "In considering claims of discriminatory taxation under the Commerce Clause . . . it is necessary to compare the taxpayers who are 'most similarly situated.' " *Kraft Gen. Foods, Inc.* v. *Iowa Dep't of Revenue & Fin., supra* at 80 n.23. Therefore, we compare a domestic corporation that owns a Massachusetts subsidiary to a foreign corporation that owns a Massachusetts subsidiary. Although the domestic corporation would be entitled to deduct the value of its subsidiary, the foreign corporation would not. See G. L. c. 63, § 30 (8) and (9). Thus, as currently formulated, the excise discriminates against foreign corporations. See *West Lynn Creamery, Inc.* v. *Healy,* 114 S. Ct. 2205, 2212, 2214 (1994), rev'g *West Lynn Creamery, Inc.* v. *Commissioner of the Dep't of Food & Agric.,* 415 Mass. 8 (1993) (Massachusetts pricing order which effectively benefited in-State economic interests by burdening out-of-State competitors held to be unconstitutional in violation of commerce clause).

The commissioner argues, however, that the statute does not discriminate or unduly burden interstate commerce because the deduction given to foreign corporations for certain foreign subsidiaries adequately compensates for the deduction given to domestic corporations for domestic subsidiaries. The commissioner further argues that, because the deduction given to foreign corporations encourages foreign corporations to organize its subsidiaries *outside* of Massachusetts, there is no concomitant benefit to Massachusetts, and thus, no commerce clause violation. While it is true that under § 30 (9) a foreign corporation is entitled to deduct from its taxable net worth the value of any foreign subsidiaries which do no business in Massachusetts, the commissioner's argument fails to persuade us for several reasons. First, because the net worth

formulas for domestic and foreign corporations differ, the deduction given to a foreign corporation for a matching subsidiary is less favorable than that given to a domestic corporation. Compare G. L. c. 63, § 30 (8), with G. L. c. 63, § 30 (9). See *Oregon Waste Sys., Inc.* v. *Department of Envtl. Quality, supra* at 1352 (to justify charge on interstate commerce as compensatory tax, the burden on interstate commerce must not exceed burden on intrastate commerce). In addition, even assuming that the deductions given for matching subsidiaries are substantially equal, the statute as a whole still places an impermissible burden on interstate commerce. Under § 30 (8) and (9), only those corporate structures which are exclusively domestic or exclusively foreign are given a deduction. Once a domestic corporation acquires a subsidiary outside of its home State, and regardless of whether that subsidiary does business in Massachusetts, the parent corporation must include the value of that subsidiary in its net worth calculation. Thus, the effect of this taxing scheme is to encourage single-State corporate structures and to penalize parent corporations that choose to cross State lines in order to acquire or create foreign subsidiaries.

The discriminatory effect of such a taxing scheme is further demonstrated by applying the so-called "internal consistency test." "[A] tax must have 'what might be called internal consistency — that is the [tax] must be such that, if applied by every jurisdiction,' there would be no impermissible interference with free trade." *Armco Inc.* v. *Hardesty,* 467 U.S. 638, 644 (1984), quoting *Container Corp. of Am.* v. *Franchise Tax Bd.,* 463 U.S. 159, 169 (1983). Clearly, if every State applied a similar excise, the acquisition of foreign subsidiaries would be reduced and multi-State corporate structures would be significantly burdened. Such a scheme clearly interferes with free trade among the States and cannot be considered consistent with the commerce clause.[7]

[7]We note that the extent of the economic burden imposed by the excise "is of no relevance to the determination whether a State has discriminated against interstate commerce." *Wyoming* v. *Oklahoma,* 502 U.S. 437, 455 (1992). "When a tax, on its face, is designed to have discriminatory

Because the excise is discriminatory, unless the commissioner can demonstrate that the excise "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives," it must be invalidated. *New Energy Co. of Ind.* v. *Limbach*, 486 U.S. 269, 278 (1988). The commissioner's burden is a heavy one and any justification for the discriminatory restrictions must survive the strictest scrutiny. *Westinghouse Elec. Corp.* v. *Tully*, 466 U.S. 388, 406-407 (1984). In demonstrating that the statute serves a legitimate local purpose, the commissioner must demonstrate that the statute is narrowly tailored to serve the State's asserted purpose. *Sporhase* v. *Nebraska ex rel. Douglas*, 458 U.S. 941, 957-958 (1982). *Aronson* v. *Commonwealth*, 401 Mass. 244, 251 (1989).

The commissioner argues that the deductions at issue advance the legitimate State goal of preventing double taxation. Although we agree that preventing double taxation is a legitimate local purpose, § 30 (8) and (9) are not narrowly tailored to serve that interest. The excise deductions only prevent double taxation for Massachusetts corporations which own Massachusetts subsidiaries. All subsidiaries that do business in Massachusetts, regardless of their State of incorporation, however, are subject to the annual corporate excise. Thus, although double taxation is avoided for Massachusetts corporations which own only Massachusetts subsidiaries, the problem of double taxation persists for multi-State corporate families. In light of this fact, we conclude that the challenged provisions do not significantly advance the legitimate State interest in avoiding double taxation, and thus, cannot withstand scrutiny.[8] We therefore hold that the chal-

economic effects, the Court 'need not know how unequal the Tax is before concluding that it unconstitutionally discriminates.' " *Westinghouse Elec. Corp.* v. *Tully*, 466 U.S. 388, 406-407 (1984), quoting *Maryland* v. *Louisiana*, 451 U.S. 725, 760 (1981).

[8]The commissioner also argues that the deduction given to a foreign corporation for a foreign subsidiary under § 30 (9) is constitutional because it recognizes that Massachusetts may not tax a foreign corporation on the value of a foreign subsidiary which does no business in Massachusetts. Although such a deduction may be warranted, this argument fails to address

lenged provisions are unconstitutional in violation of the commerce clause. We need not reach the plaintiffs' equal protection claim.

2. *Attorney's fees.* The plaintiffs also seek attorney's fees under 42 U.S.C. §§ 1983 and 1988 (1988). Section 1983 provides a Federal cause of action against every person who under the color of State law deprives another person of any rights, privileges, or immunities guaranteed by the Constitution or the laws of the United States. Section 1988 authorizes a court, in its discretion, to award reasonable attorney's fees to a prevailing party in any action to enforce a provision of § 1983. A court's discretion in this regard is limited, however. *Blanchard* v. *Bergeron*, 489 U.S. 87, 89 n.1 (1989). A court should deny a prevailing party attorney's fees only if there are special circumstances which would render an award unjust. *Id.*

The commissioner offers no special circumstances which would justify the denial of attorney's fees. Rather, he argues that the Tax Injunction Act, 28 U.S.C. § 1341 (1988), evinces a congressional intent that adequate State remedies are to be the exclusive means for resolving State tax disputes.[9] He further argues that because an adequate State remedy exists in this case, the plaintiffs are not entitled to attorney's fees under §§ 1983 and 1988.

State courts have split on whether, in a State tax dispute, a plaintiff may maintain a § 1983 action where an adequate State remedy exists. Compare *State ex rel. Hanson* v. *Quill Corp.*, 500 N.W.2d 196, 197 (N.D.), cert. denied, 510 U.S. 859 (1993) (where adequate remedy exists under State law, taxpayer not entitled to recover attorney's fees under

why it is necessary to treat a foreign corporation with a Massachusetts subsidiary less favorably than a similarly situated domestic corporation.

[9] The Tax Injunction Act, 28 U.S.C. § 1341 (1988), prevents a Federal court from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The principle of comity likewise prevents a Federal court from entertaining any action for damages under § 1983 to redress an allegedly unconstitutional State tax. *Fair Assessment in Real Estate Ass'n* v. *McNary*, 454 U.S. 100 (1981).

§ 1988) with *Bung's Bar & Grille, Inc.* v. *Township Council of Florence*, 206 N.J. Super. 432, 459-462 (1985) (taxpayer entitled to maintain § 1983 action in State court regardless of adequacy of State remedies). Further, the United States Supreme Court has recently granted certiorari in the case of *Private Truck Council of Am., Inc.* v. *Oklahoma Tax Comm'n*, 879 P.2d 137 (Okla. 1994) (per curiam), cert. granted, 115 S. Ct. 714 (1995), which held that under the principles of comity and federalism, State courts should decline to impose Federal remedies where an adequate State remedy exists. Because the state of the law in this area is uncomfortably unsettled, see *Dennis* v. *Higgins*, 498 U.S. 439, 464-465 (1991) (Kennedy, J., dissenting), and the nature and extent of the plaintiffs' relief has not been determined, we need not decide the issue of attorney's fees at this time.

3. *Conclusion.* We remand the case to the county court for the entry of a suitable declaration that the challenged deductions in G. L. c. 63, § 30 (8) and (9), violate the commerce clause of the United States Constitution, and for the entry of an order that the Appellate Tax Board should decide the amount of the abatements to be made to the plaintiffs. We remand the matter of attorney's fees to the single justice for consideration and decision based on further argument of counsel and such guidance as may be obtained in the opinion or opinions in *Private Truck Council of Am., Inc.* v. *Oklahoma Tax Comm'n, supra.*

*So ordered.*