Textron Inc. & others[1] *vs.* Commissioner of Revenue.

Suffolk. September 10, 2001. - October 22, 2001.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Taxation,* Corporate excise, Commissioner of revenue. *Constitutional Law,* Taxation, Standing, Commerce clause. *Practice, Civil,* Standing. *Commissioner of Revenue.*

Discussion of provisions of the Massachusetts corporate excise tax statutory scheme relevant to the facts of this case. [302-304]

Taxpayers claiming that classifications contained in G. L. c. 63, § 30 (10) and (11), pertaining to the calculation of the corporate excise tax and defining tangible and intangible property corporations, impermissibly burdened interstate commerce by according a foreign subsidiary deduction to foreign, but not to domestic, corporations, were not adversely affected by the disparate treatment and, thus, were not entitled to challenge these provisions. [304-305]

Taxpayers claiming that the disparate treatment accorded to domestic and foreign corporations by the different calculations, for taxable net worth contained in G. L. c. 63, § 30 (8) and (9), defining the nonincome measure of the corporate excise tax for domestic and foreign intangible property corporations, impermissibly discriminated on its face against foreign corporations in violation of the commerce clause, were not entitled to challenge these provisions, where the taxpayers were not adversely affected by the challenged provisions. [305-306]

This court, setting aside, for purposes of certainty and predictability, the issue of standing, concluded that it was impossible, on the record presented, to state with any certainty that the different taxable net worth formulae for domestic and foreign corporations, as contained in G. L. c. 63, § 30 (8) and (9), adversely affected foreign corporations or impermissibly burdened interstate commerce. [306-307]

The Commissioner of Revenue had authority to promulgate a directive that erased the effect of any constitutional infirmities that may have existed in the different statutory formulae for calculating taxable net worth of domestic and foreign corporations contained in G. L. c. 63, § 30 (8) and (9), by giving all taxpayers the opportunity to pay the lowest corporate excise tax that the relevant provisions produce, and to make a separate election each year choosing whichever subsections are most advantageous. [307-309]

[1]Avco Research Laboratory, Inc.; Avco Corporation; Turbine Engine Components Textron (Newington Operations) Inc.; Textron Financial Corporation; and Textron Automotive Functional Components Inc. — McCord Winn Division.

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*Paul H. Frankel,* of New York (*Craig B. Fields,* of New York, & *Maxwell D. Solet* with him) for the taxpayers.

*Juliana deHaan Rice,* Assistant Attorney General (*Harvey Pullman* with her) for Commissioner of Revenue.

GREANEY, J. This is an appeal from a decision of the Appellate Tax Board (board) affirming the partial denial by the Commissioner of Revenue (commissioner) of applications by Textron Inc. and five related corporations (collectively, Textron, except where it is necessary to identify a specific corporation) for the abatement of corporate excise taxes imposed for the tax years 1990 through 1992. Textron claims that four of the fifteen definitional provisions set forth in G. L. c. 63, § 30, pertaining to the calculation of the corporate excise tax, are unconstitutional because they impermissibly burden interstate commerce in violation of the commerce clause of the United States Constitution. Textron seeks to have the current corporate excise tax repealed in its entirety, replacing it with the law that was in effect before 1919 (under which all corporations, domestic and foreign, were required to pay an annual tax of not more than $2,000). We granted Textron's application for direct appellate review and now affirm the board's decision.

We summarize the background of the case.[2] The six taxpayers in this appeal are members of a nationally consolidated corporate group that filed Massachusetts combined corporate excise returns for tax years 1990 through 1992. Textron Inc., a multistate corporation involved in the business of aerospace technology and the manufacture of commercial products, whose principal place of business and commercial domicil is Providence, Rhode Island, is the reporting corporation for the controlled group. Three of the remaining five taxpayers, Avco Corporation (Avco); Avco Research Laboratory, Inc. (Avco Research); and Textron Financial Corporation (Textron Financial), also are incorporated in States other than Mas-

---

[2]Our factual summary is drawn primarily from the board's findings of facts, which were based on a stipulation of facts, a supplemental stipulation of facts, and testimony and exhibits.

sachusetts, and two, Babco Corporation (Babco) and Textron Automotive Functional Components Inc. — McCord Winn Division (McCord Winn), are Massachusetts corporations. For each tax year at issue, all of the taxpayers except Textron Inc. paid excises as tangible property corporations as defined by G. L. c. 63, § 30 (10).[3] Textron Inc. paid excises as an intangible property corporation as defined by G. L. c. 63, § 30 (11).[4]

On October 8, 1996, Textron Inc. filed an application for the abatement of corporate excise tax totaling $1,328,248 (plus interest and penalties) for Textron for the tax years 1990, 1991, and 1992. The application was based on the premise that disparate treatment accorded to domestic and foreign corporations[5] in the classification of· tangible and intangible property corporations under G. L. c. 63, § 30 (10) and (11), see notes 3 and 4, *supra*, and in the measure of an intangible property corporation's taxable net worth under § 30 (8) and (9),[6] is facially discrimina-

---

[3]Section 30 (10) defines a "[t]angible property corporation" as one "whose tangible property . . . is ten per cent or more of . . . its total assets . . . less those assets as are situated in the commonwealth . . . and are subject to local taxation, and, for a foreign corporation, less its investment . . . in foreign corporations not registered to do business nor doing business in the commonwealth, as shall be found by multiplying said amount by such corporation's income apportionment percentage, as determined under the provisions of section thirty-eight, or a corporation which, in the judgment of the commissioner, should be so classified."

[4]Section 30 (11) defines an "[i]ntangible property corporation" as one "whose tangible property situated in the commonwealth . . . not subject to local taxation is less than ten per cent of . . . its total assets . . . less those assets as are situated in the commonwealth . . . and are subject to local taxation, and, for a foreign corporation, less its investment . . . in foreign corporations not registered to do business nor doing business in the commonwealth, as shall be found by multiplying said amount by such corporation's income apportionment percentage, as determined under the provisions of section thirty-eight, or a corporation which, in the judgment of the commissioner, should be so classified."

[5]A "[f]oreign corporation[]," as defined in G. L. c. 63, § 30 (2), includes corporations or associations established, organized, or chartered under the laws of other States of the United States or of any foreign nation.

[6]A corporation that meets the mathematical test of an "intangible property corporation" under G. L. c. 63, § 30 (11), must compute its excise based, in part, on its taxable net worth. Calculations for the measure of net worth for domestic intangible property corporations under § 30 (8), and for the measure of net worth for foreign intangible property corporations under § 30 (9), differ significantly and will be discussed later in this opinion.

tory and creates fatal flaws in the main design of §§ 32 and 39,[7] which in turn triggers the automatic statutory repeal and the revival of prior law, as provided for by G. L. c. 63, § 52.[8] The commissioner denied the applications (or was deemed to have denied·them by letting six months pass without acting on them) and Textron appealed from the denials to the board.

On January 4, 1999, prior to the hearing of the appeals, the Department of Revenue (department) issued DD 99-1 (Jan. 4, 1999), 3 Official MassTax Guide at 657 (West 2001) (directive). Recognizing that corporations were required to employ different formulae in determining their corporate excise tax liability depending on place of incorporation, and acknowledging pending constitutional challenges to this divergent treatment, the directive provided that taxpayers could choose the formulas they preferred to determine whether a corporation is a tangible property corporation or an intangible property corporation under § 30 (10) or (11), and calculate the net worth of an intangible

---

[7]General Laws c. 63, §§ 32 and 39, are the basic tax-imposing provisions of the corporate excise tax. Section 32 applies to domestic corporations, and § 39 applies to foreign corporations.

[8]General Laws c. 63, § 52, provides, in material part:

"If the provisions of [§ 32] imposing an excise on domestic business corporations . . . are declared unconstitutional or inoperative [by the United States Supreme Court or by this court], such portion of the law relating to business corporations [set forth in §§ 30-42B relating to domestic corporations] . . . shall be null and void, and . . . shall become inapplicable to such corporations. In such event, all laws applicable to domestic business corporations [prior to 1919] shall thereupon be revived and become operative and applicable . . . . If the provisions of [§ 39] imposing an excise on foreign corporations . . . are declared unconstitutional or inoperative . . . such portion of the law relating to business corporations . . . as set forth in [§§ 30-42B relating to foreign corporations] shall be null and void, and . . . shall become inapplicable to such corporations. In such event, all laws applicable to foreign corporations [prior to 1919] shall thereupon be revived and become operative and applicable in respect to such corporations . . . . If any part, section or subdivision of [§§ 30-42B], other than the provisions in [§§ 32, 38C, 39, or 42B] imposing an excise, shall be declared unconstitutional or inoperative, the remaining parts of [§§ 30-42B] shall not be affected thereby."

property corporation under either § 30 (8) or (9), regardless of their status as a domestic or foreign corporation.[9]

The directive's application resulted in Textron Inc.'s having no tax liability under the nonincome measure of the corporate excise in each of the tax years at issue. As a result, the commissioner granted Textron Inc. a partial abatement of $36,355 (exclusive of statutory additions). The commissioner, however, still denied (or was deemed to have denied) the portion of the abatement claims which would apply the "repeal and revival" remedy contained in G. L. c. 63, § 52, to Textron. The amount of corporate excises remaining in dispute was stipulated to be $869,675 (exclusive of statutory additions).

The main issue before the board was whether Textron was entitled to abatements due to alleged constitutional infirmities in G. L. c. 63, § 30 (10) and (11), defining tangible and intangible property corporations, and § 30 (8) and (9), defining the nonincome measure of the corporate excise tax for domestic and foreign intangible property corporations. The board attacked the problem in different ways. First, the board found that all of the taxpayers lacked standing to challenge the constitutionality of § 30 (10) and (11), and that only one, Textron Inc., had standing to challenge the constitutionality of § 30 (8) and (9). Next, the board decided that, although the provisions of § 30 (8) and (9) may impose a greater tax burden on foreign corporations, the different statutory treatment was narrowly drawn to serve a legitimate State interest (the avoidance of taxing extraterritorial income), and, thus, the provisions were not unconstitutional under the commerce clause. The board further determined that, even if the provisions of § 30 (8) and (9) were unconstitutional under the commerce clause, Textron was not entitled to the "repeal and revival" remedy it sought under G. L. c. 63, § 52. The board concluded that the commissioner, in issuing the directive, had interpreted the corporate excise statutes in a manner that avoided potential constitutional issues and that conformed to the judicial guidance expressed in our decision in *Perini Corp.* v. *Commissioner of Revenue*, 419 Mass. 763, cert. denied,

---

[9]The directive was issued in conjunction with TIR 99-3 (Feb. 11, 1999), 3 Official MassTax Guide at 597 (West 2001), which clarified the effective date of the directive and specified the method whereby elections could be made.

516 U.S. 822 (1995) (examining constitutionality under the commerce clause of other provisions of § 30 [8] and [9]), and the recommendations of a single justice of this court made pursuant to the rescript in that decision as to the proper remedy. See S.J.C. No. SJ-93-0393. Due to the application of the directive, the board reasoned that Textron, Inc., was not treated differently because of its status as a foreign corporation.

In order to clarify the issues in this appeal, we now briefly outline the relevant provisions of the corporate excise tax statutory scheme. Under the nearly identical language of G. L. c. 63, §§ 32 and 39, domestic and foreign corporations doing business in the Commonwealth are required to pay an excise based, in part, on a percentage of their net income and, in part, on a percentage of the value of their property. See G. L. c. 63, §§ 32 (setting excise rates applicable to domestic corporations) and 39 (setting excise rates applicable to foreign corporations). See also St. 1969, c. 546, §§ 18, 21 (imposing comprehensive surtax applicable to percentage rates contained in G. L. c. 63, §§ 32 and 39); G. L. c. 63, § 31B, inserted by St. 1970, c. 634, § 3 (reducing rate applicable to property measure to $2.60 per thousand [including surtax], or 0.26%). The property, or non-income, portion of the excise is measured by a corporation's tangible property, if the corporation is classified as a "tangible property corporation" under § 30 (10), see note 3, *supra*, or by its net worth if classified as an "intangible property corporation" under § 30 (11), see note 4, *supra*.

Whether a corporation is classified as a tangible property corporation (with tangible property as its property-tax base) or an intangible property corporation (with net worth as its property-tax base) depends, in simplified terms, on the ratio of its tangible property to its total assets. If the ratio is ten per cent or more, the corporation is a tangible property corporation under § 30 (10); if less than ten per cent, an intangible property corporation under § 30 (11). The one difference in the tangible-intangible property fraction for domestic and foreign corporations is that, in the case of a foreign corporation, the "total assets" in the fraction's denominator is reduced by "its investment . . . in foreign corporations not registered to do business nor doing business in the commonwealth." G. L. c. 63, § 30 (10)

and (11). This foreign subsidiary deduction has the effect of increasing the value of the fraction, as compared with the fraction for a domestic corporation similarly situated, and tends to increase the likelihood that foreign corporations will be classified as tangible property corporations, as compared with domestic corporations.

The formulae used by domestic and foreign intangible property corporations to calculate their net worth are contained in § 30 (8) and (9), respectively. See note 6, *supra.* Section 30 (8) defines the net worth of a domestic corporation as:

> "such portion of . . . its total assets . . . less the sum of (1) its liabilities . . . (2) . . . its tangible property situated in the commonwealth . . . subject to local taxation . . . (3) . . . its investment in subsidiary corporations *organized in the commonwealth* which represent eighty per cent or more of the voting stock of said corporations, as shall be found by multiplying said amount by such corporation's income apportionment percentage, as determined under the provisions of section thirty-eight" (emphasis supplied).

Section 30 (9) is more complicated and defines the net worth of a foreign corporation as:

> "such portion of the book value of its total assets less its liabilities . . . as the book value of its tangible assets situated within the commonwealth . . . not subject to local taxation plus the amount of its intangible assets . . . allocable to this commonwealth . . . bear to the book value of its total assets on said date. The intangible assets allocable to this commonwealth shall be such portion of the book value of its total intangible assets . . . less the book value . . . of its investment in and advances to subsidiary corporations *not doing business in the commonwealth* which represent eighty per cent or more of the voting stock of said corporations, as shall be found by multiplying said amount by such corporation's income apportionment percentage, as determined under the provisions of section thirty-eight" (emphasis supplied).

In *Perini Corp.* v. *Commissioner of Revenue, supra,* this

court addressed the constitutionality of two deductions used in computing the taxable net worth of domestic and foreign intangible property corporations and concluded that the challenged deductions, in italics above, discriminated against interstate commerce in violation of the commerce clause of the United States Constitution. In accordance with the recommendation of a single justice of this court made pursuant to this court's order in the *Perini* decision, a final judgment after rescript was entered which, the parties agree, had the practical effect of severing the offending language from the remaining provisions of § 30 (8) and (9), so that intangible property corporations, no matter where incorporated, are allowed to deduct the value of all subsidiaries, regardless of the subsidiaries' place of incorporation.[10] See S.J.C. No. SJ-93-0393 (June 6, 1999).

1. We turn to Textron's claim that the classifications contained in G. L. c. 63, § 30 (10) and (11), impermissibly burden interstate commerce by according a foreign subsidiary deduction to foreign, but not to domestic, corporations. This claim appears to be based on the premise that the foreign subsidiary deduction increases the likelihood that a foreign corporation will be classified as an intangible corporation.

As an initial matter, the board appears to have been correct on the issue of standing. With respect to the five taxpayers that paid taxes as tangible property corporations, the parties stipulated that they would have been so classified under G. L. c. 63, § 30 (10), for all tax years at issue, irrespective of whether such classification had been determined according to the formula for domestic corporations or the formula for foreign corporations. Textron Inc., a foreign corporation and the only taxpayer who filed as an intangible property corporation, does not allege that its classification as an intangible property corporation was in any way affected by the application of the foreign subsidiary deduction.

It is even possible that the disparate treatment complained of

---

[10]To date, there has been no legislative remedy to the constitutional flaws in G. L. c. 63, § 30 (8) and (9), identified by *Perini Corp.* v. *Commissioner of Revenue*, 419 Mass. 763, 768, cert. denied, 516 U.S. 822 (1995).

may have conferred a benefit on Textron Inc.[11] See A.C. Bailey & W.G. Van Dorn, Taxation § 7:3, at 242-243 (4th ed. 2000) (foreign subsidiary deduction "increas[es] the instances in borderline cases where high-networth foreign corporations with substantial 'investments' in corporations with no Massachusetts contacts will achieve tangible-property status, thereby likely incurring a lower property component of the excise than would be incurred under intangible-property status"). We arrive, nevertheless, at the virtually inescapable conclusion that none of the taxpayers was adversely affected by the disparate treatment and, thus, none may challenge these provisions. See *Tax Equity Alliance for Mass.* v. *Commissioner of Revenue*, 423 Mass. 708, 715-716 (1996). See also *Doe* v. *The Governor*, 381 Mass. 702, 704 (1980) ("only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of the government").[12]

2. What has been said above on the subject of standing applies as well to Textron's claim that the disparate treatment accorded to domestic and foreign corporations by the different

[11]Textron Inc. calculated its excise taxes as an intangible property corporation for all of the tax years at issue. It appears from the record, however, that, before the issuance of DD 99-1 (Jan. 4, 1999), 3 Official MassTax Guide at 657 (West 2001), Textron Inc. was converted into a tangible property corporation for the tax years 1990 and 1992, after the department's interpretation of this court's decision in *Perini Corp.* v. *Commissioner of Revenue, supra*, see note 10, *supra*, allowed the deduction of the value of all subsidiaries (no matter where the subsidiaries' place of incorporation) in assessing its classification under § 30 (10) and (11). Apparently the conversion to a tangible property corporation reduced the excise tax that Textron Inc. would have paid (had not the subsequent issuance of DD 99-1 further diminished its tax liability as an intangible property corporation) by a considerable amount.

[12]Textron's claim that the statutory remedy set forth in G. L. c. 63, § 52, automatically allows standing because, if successful in its claim, its tax burden will be significantly diminished, is circular and has no merit. A taxpayer who has not been harmed by the operation of a tax law may not challenge that law. See *Tax Equity Alliance for Mass.* v. *Commissioner of Revenue*, 423 Mass. 708, 715-716 (1996). That the statute provides a particular remedy in the event a taxpayer prevails on a claim that specific sections of the statute are unconstitutional does not automatically confer standing on all taxpayers who, although unaffected by the alleged unconstitutionality, would like to see the remedy invoked.

calculations for taxable net worth contained in § 30 (8) and (9) impermissibly discriminates on its face against foreign corporations in violation of the commerce clause. As the only intangible property corporation among the six taxpayers, only Textron Inc. could possibly have been affected by the different formulae for calculating the net worth measure. Further, because it was stipulated by the parties that the application of the directive resulted in its having zero taxable net worth for the tax years at issue, we know that even Textron Inc. was not adversely affected by the challenged provisions.

3. Putting these observations aside, for purposes of certainty and predictability of the corporate excise tax law, we shall assume standing, discuss briefly the merits of Textron's challenge, and proceed to approve the directive, which appears to have rendered any constitutional infirmities that may exist in § 30 (8) and (9), for all practical purposes, moot.

With respect to State taxation, a law that taxes a foreign corporation more heavily than a comparably situated domestic corporation is discriminatory against interstate commerce on its face and, usually, per se invalid. See *Fulton Corp.* v. *Faulkner*, 516 U.S. 325, 331 (1996), and cases cited; *Perini Corp.* v. *Commissioner of Revenue*, *supra* at 767-769. As previously discussed, this court in *Perini* held unconstitutional under the commerce clause the provisions of § 30 (8) and (9) that denied domestic corporations a deduction for investments in foreign subsidiaries, and foreign corporations a deduction for investments in domestic subsidiaries. The court determined that the effect of this tax scheme was to encourage single-State corporate structures and to penalize parent corporations that chose to cross State lines in order to acquire or create foreign subsidiaries. *Id.* at 770. "Such a scheme clearly interferes with free trade among the States and cannot be considered consistent with the commerce clause." *Id.*

Even after the corrective surgery effected by the *Perini* case, the taxable net worth formulae for domestic and foreign corporations, as contained in § 30 (8) and (9), remain quite different. The calculation of a domestic corporation's taxable net worth under § 30 (8) is fairly straightforward and represents a conventional version of adjusted net worth, multiplied by an ap-

portionment percentage.[13] A foreign corporation, under § 30 (9), must apply a far more complicated formula, in which its apportionment percentage is applied to net worth only indirectly.

What is unclear, however, is how the different formulae adversely affect foreign corporations (for example, by resulting in a higher taxable net worth than for a comparable domestic corporation) or impermissibly burden interstate commerce (for example, by discouraging foreign corporations from doing business in the Commonwealth, or domestic corporations from acquiring foreign subsidiaries). Although we are mindful that another taxpayer could show an impermissible burden, on this record, it is impossible to state with any certainty that the challenged provisions are unconstitutional under the commerce clause.

4. The commissioner's issuance of the directive has, at any rate, erased the effect of any constitutional infirmities that may exist in the different statutory formulae for calculating net worth contained in § 30 (8) and (9). As discussed above, the directive gives all corporations subject to the corporate excise tax, whether foreign or domestic, the option of taking the subsidiary deduction, or not, in determining its classification as a tangible or intangible property corporation under § 30 (10) and (11), and, if classified as an intangible property corporation, of applying either net worth formula designated for domestic or foreign corporations in § 30 (8) and (9). All taxpayers have the opportunity to pay the lowest excise tax that the relevant provisions can produce, and they may make a separate election each year choosing whichever subsections are most advantageous.

We reject Textron's assertion that the commissioner lacked the authority to promulgate the directive. As head of the agency charged with administering the corporate excise tax statutes, the commissioner has lawful discretion not to enforce a doubtful statute, or, as here, to interpret a statute in a manner that avoids potential constitutional issues. See *Heckler* v. *Chaney*, 470 U.S. 821, 831-832 (1985). The directive usurps no legislative prerogative; it safeguards the Legislature's taxing goals against

---

[13]Each taxable corporation computes its own, separate income-apportionment percentage under G. L. c. 63, § 38, even when filing a combined return, as did Textron.

assault by ensuring tax collection in a way that leaves the calculation and measure of the tax to the taxpayer's choice. We agree with the comment in one authority on State taxation that "[t]he [d]epartment's solution [in issuing the directive] was not only straightforward, but inspired." A.C. Bailey and W.G. Van Dorn, *supra* at § 6:2, at 154. By giving the corporate taxpayer "its untrammeled choice of the best of available worlds, the commissioner has . . . fully carried out [this court's mandate in *Perini*] and . . . eliminated the [F]ederal constitutional issues presented." *Id.* at § 7:7, at 259. The directive does not rewrite the statute, but its application to a corporate taxpayer effectively severs the challenged provisions from the remainder of the statute. Cf. *Commonwealth* v. *Chou*, 433 Mass. 229, 238 (2001) (unconstitutional statutory provision may be struck, if doing so does not sacrifice integrity and purpose of remainder of statute). "Any of a variety of methods of curing an unconstitutional tax is permissible 'so long as the resultant tax actually assessed during the contested tax period reflects a scheme that does not discriminate against interstate commerce.' " *American Trucking Ass'ns* v. *Secretary of Admin.*, 415 Mass. 337, 350 (1993), quoting *McKesson Corp.* v. *Division of Alcoholic Beverages & Tobacco, Dep't of Business Regulation of Fla.*, 496 U.S. 18, 41 (1990). See *Fulton Corp.* v. *Faulkner*, *supra* at 346-347 (States may fashion own remedies for State tax laws determined to be unconstitutional).[14]

Finally, we are not concerned that a successor commissioner

---

[14]Although unnecessary to the result, a few words are in order concerning Textron's primary goal in its determined efforts to have the challenged provisions of § 30 struck as unconstitutional — substantial abatements that would be forthcoming should this court apply the "repeal and revival" remedy set forth in G. L. c. 63, § 52. Textron's efforts are misplaced.

Under the unambiguous language of § 52, the "repeal and revival" remedy applies only in the event that certain sections of the corporate excise statutory scheme, namely §§ 32, 38C, 39, or 42B (the tax-imposing provisions), are declared unconstitutional. "If any part, section or subdivision of [§§ 30-42B] other than [§§ 32, 38C, 39, or 42B] . . . shall be declared unconstitutional or inoperative, the remaining parts of [§§ 30-42B] shall not be affected thereby." G. L. c. 63, § 52. See *Opinion of the Justices*, 269 Mass. 611, 615-616 (1929). The Legislature's intent in enacting § 52 was to avoid the possibility that the basic statutory provisions imposing the new excise tax might be held unconstitutional, thus leaving the Commonwealth with no corporate excise tax law in effect. See *id.* at 617. This court has stated that § 52 is "not to be

may rescind or modify the directive, possibly, thereby, creating constitutional problems. As stated, the solution achieved by the directive embodies creative tax policy and enforcement in a way that moots constitutional concerns. If the directive undergoes change by a commissioner in a way that raises valid constitutional arguments, there will be time enough for this court to address the issues, assuming the Legislature has not otherwise acted preemptively.

5. The decision of the Appellate Tax Board is affirmed.

*So ordered.*

---

stretched to cover facts not within its fair meaning." *W. & J. Sloane* v. *Commonwealth*, 253 Mass. 529, 535 (1925). Accordingly, the "repeal and revival" remedy would not have been available to Textron, notwithstanding our decision today.